In re Appropriation of Easements for Highway Purposes: The State of Ohio, Appellant, *v.* Linder et al., Appellees.

(No. 8681—Decided December 7, 1959.)

*Mr. Mark McElroy,* attorney general, and *Mr. Howard T. Cook,* for appellant.
*Mr. William E. Santen,* for appellees.

O'CONNELL, J. The state of Ohio has taken from the owners for highway purposes the following described real estate:

Parcel No. 29, a perpetual easement for highway purposes, comprising a strip of land 8 feet in depth and 350 feet in width; parcel 29-SL-1, a temporary right to construct a slope easement in accordance with plans and specifications and for no other purpose; and parcel 29-SL-2, a temporary right to construct a slope easement in accordance with plans and specifications and for no other purpose. Said parcels are needed in the construction and improvement of state route No. 125, sections 4.83-11.38, Military Survey 609, Anderson Township, Hamilton County, Ohio, and owned by Dan Linder and Robert Linder.

Before the appropriation, the owners had undivided one-half interests in an assemblage of land on Beechmont Avenue in Mt. Washington, near Cincinnati, Ohio, divided by the owner for economic reasons into land and structures, leased to the Sun Oil Company; into land and structures, leased to the Sixty-Second Shops, Inc.; into land and structures, leased to Porter Paint Company; and into land and structure, at the time of trial vacant but formerly leased to an Electric Appliance Shop. Approximately 25% of the front of this last structure was appropriated. In the charge of the court the jury was instructed that the taking of this 25% of the Electric Appliance building could not be carried out without manifest injury to the remaining part of the structure, and hence the state had to take and pay for the

entire structure. No error in this respect is claimed by the state of Ohio.

For this real property, the state of Ohio has deposited with the Clerk of Courts of Hamilton County the sum of $45,034, such sum being in accordance with the state's resolution and finding which was filed in the Court of Common Pleas of Hamilton County, Ohio, on May 29, 1958, and numbered A164,561 on the docket of the Court of Common Pleas.

The property owners perfected their appeal from this resolution and finding to the Court of Common Pleas. During the trial which followed, various valuations developed, as follows:

| | A. Land & Easements | B. Black Top & Signs | C. Structure Taken | D. Damage | E. Total |
|---|---|---|---|---|---|
| 1. Value fixed by the state of Ohio and deposited, $8,434 (R23) | | | $ 8,600 | $28,000 | $ 45,034 |
| 2. Mr. Mayer, for State, $11,370 (R259) | | $2400 (R259.62) | $19,560 (R2752) | $18,240 | $ 51,570 (R272) |
| 3. Mr. Fast, for State, $11,370 (R381-2) | | $2391 (R302.00) | $15,996 (R309) | $23,988 | $ 53,745 |
| 4. Appellant, in person, $10,579 (R52) | | (Includes B) | $31,450 (R53) | $97,666 | $139,695 |
| 5. Mr. Spilker, for appellant, $12,600 (R155) | | (Includes B) | $23,400 (R156) | $41,480 | $ 77,480 |
| 6. Mr. Merriman, for appellant, $10,134 | | (Includes B) | $31,204 (R200) | $90,500 (R200) | $131,938 |
| 7. Mr. Wm. Grogan, for appellant, $9,500 (R238) | | (Includes B) | $29,000 (R240) | $86,500 (R240) | $125,000 |
| 8. Mr. Ben Grogan | | | *Replacement Cost* $35,500 | | |
| 9. Jury verdict, $10,500 | | | $26,500 | $43,000 | $ 80,000 |

From the jury verdict of $80,000 the state has appealed to this court.

The appellant cites various alleged errors, for the commission of which he asks that the judgment of the trial court be reversed.

Its first assignment of error is that the court erred in permitting the landowner to testify as to the metes and bounds of lease lines on the subject property. However, "In such a proceeding [appropriation matters], the admission and exclusion of evidence as to the value of the land and other related subjects rest to a large extent in the discretion of the trial court, and, where it is apparent that such court did not abuse its discretion in these respects and that no prejudicial error has intervened, a reviewing court will not interfere." *In re Appropriation by Ohio Turnpike Commission,* 164 Ohio St., 377, 131 N. E. (2d), 397.

That there was no such abuse of discretion is clear from the record. Counsel for the state had objected to the following question propounded to the co-owner of the premises, Robert Linder: "How much land does the Sunoco Station occupy?" The basis of the objection was that, since the property was being taken as a whole, it was erroneous to admit evidence showing its subdivisions. The court, however, admitted the evidence because he had been informed by opposing counsel that the purpose of the question was to clarify matters for the better understanding of the jury.

Counsel for the state also maintain that the recitals of the various rentals was in violation of the law as it is to be found in the case of *In re Appropriation for Highway Purposes,* 166 Ohio St., 249, 142 N. E. (2d), 219. However, in the second paragraph of the syllabus of that case the following is to be found: "In such a proceeding [appropriation of property], evidence as to the reasonable rental value of such real estate *may* be admissible."

Moreover, in 29 Corpus Juris Secundum, 1266, Section 273, there is this statement: "It is ordinarily competent to show the rental value of the property."

And it was held in *City of Cincinnati* v. *Neff,* 20 Bull., 8, 10 Dec. Rep., 292, that rental may be proved as tending to show the value of the premises.

Finally, in 18 American Jurisprudence, 988, Section 344, there occurs the following: "Rental value may be taken into consideration as bearing upon the market value * * *."

The second assignment of error is that the trial court erred

in admitting testimony concerning the construction of median divider plates in the center line of state route No. 125, as they would affect the traffic flow, loss of profits and damage to the residue of the owners' property.

There are conflicting statements in the briefs of the state and the owners in this matter. According to the former, the state's brief, page 3, states that: ''The record (R. 116, 117, 118, 119 and 120) is replete with repetition of questions relative to the loss of traffic, damage to business and damages to residue by reason of the installation of the divider plates; the answers and speculative conclusions of which were admitted over objections by counsel for the state.''

Then on page four of the brief there is the statement that: ''The record also shows (R. 158, 159, and 160) that in the testimony of Mr. John Spilker, appellee's witness, the same conclusions were given to the jury as an item affecting or relating to damages to the residue.'' However, a reference to those pages of the record discloses no objection on the part of the state.

Likewise, on page four of the brief there is this statement: ''The record also shows (R. 204) that Mr. Clifford Merriman, appellee's witness, gave testimony to the effect that the median divider plates were a consideration in his figure of damages to residue.'' However, again, there was no objection by the state.

In the owners' brief there is the following reference (p. 6) to divider strips: ''The divider strips next appear in the evidence (R50) when Mr. Linder, the property owner, testified: 'Well in my opinion the bumper strips through the center of the highway will tend to eliminate customers from the opposite side of the street. Crossing these bumper strips it will be inconvenient and dangerous.' ''

To this testimony, the state objected as follows: ''I object, I didn't realize this witness was testifying as an expert witness.''

The brief goes on to say that such objection did not constitute an objection to the substance of the answer, and that therefore the trial court was not informed that if such testimony related to damage to the residue, it was improper. Under such circumstances, the reviewing court is not the place to bring up

such objection when it was not made at the time of the trial. 3 Ohio Jurisprudence (2d), 40, Section 185.

The brief says further "that the state did not object to the alleged error assigned as No. 2 until before this reviewing court is amply borne out by the balance of the record." And it cites several instances in which no objection was made to testimony which it claims (in the reviewing court) should have been excluded. Moreover, it maintains that at the end of the testimony "the state could have asked the court to strike from the record any evidence tending to show a diminution in value due to the diverting of vehicular traffic from the appellants' premises."

Finally, in connection with this assignment of error we should consider special charge No. 6, which the state offered and to which no objection was made by the owners. This charge was as follows:

"I charge you as a matter of law that an owner of land abutting on a highway has no property right in the continuation of the flow of traffic past his property and is entitled to no compensation for any diminution in value to the remainder of his property due to the construction of median dividers in the highway which thereby divert vehicular traffic from his premises."

It appears to this court that this special charge would have the effect of undoing any damage done to the state's case, even assuming that such damage had taken place. Such is the following opinion in 4 Ohio Jurisprudence (2d), 117: "Error in admitting incompetent or otherwise inadmissible evidence may in some cases be, and frequently is considered to have been, cured and rendered harmless by subsequent instructions to disregard it * * *." Likewise in *Henkle* v. *McClure*, 32 Ohio St., 202, the second paragraph of the syllabus states that: "The effect of incompetent testimony once admitted, can not be done away with, except by such a charge to the jury as will enforce them to disregard it completely."

Nor does this court consider testimony concerning the history of the property owners' proprietorship in the premises to constitute prejudicial error, as is indicated in the state's third assignment of error. Though it may not have been essential to the determination of the damages, it may have been helpful in such regard.

Likewise this court is of the opinion that the fourth and fifth assignments of error do not postulate prejudicial error. Referring to the record, at pp. 228 and 229, there is the following testimony on cross-examination of Clifton Merriman, witness for the owners:

"Q. Let me ask you this, Mr. Merriman, as an expert on real estate throughout this county, isn't it a fact that all or most of the new drive-in businesses, shopping centers, etc., throughout this great Hamilton County are limiting their access to entrance to their lots for the purpose of controlling the traffic? A. If the building were designed with that in mind to start with that is good but this here with the ground, before taking, there was enough room to drive in. If, before taking, there was a limited entrance in this property that would not have affected this as much, and with that type of operation you are correct, but there is enough ground, you do not have the slope. Here you are going to be driving in through an area, your driveway is going to slope on each side.

"Q. As a matter of fact that is so bad that the Swifton Shopping Center on Reading Road has a 12-foot lane going up to their parking lot, hasn't it?

"Mr. Santen: Objection, Your Honor.

"The Court: Sustained.

"A. I have been to Swifton Shopping Center.

"Q. Would you describe the type of entrance they have on Reading Road? A. I have never entered from Reading Road.

"Q. How high would you say that parking lot averages above the existing roadway?

"The Court: I don't think we are interested in this Swifton Shopping Center, Mr. Cook. What has that to do with the situation here on Beechmont Avenue? We are not concerned with it. Proceed to another question.

"Mr. Cook: Note my exception to the court's ruling.

"The Court: You may have an exception."

First, there was an answer to the question whether most of the new drive-in businesses throughout Hamilton County were not "limiting their access to entrance to their lots" to control traffic. The answer was that with certain buildings such limited access was to be desired, but not with the buildings involved

in this case. There was no objection to this question, and this court does not think the state's brief (p. 8) is accurate when it states that: ''At (R229) counsel for appellant attempted to test the accuracy, credibility and knowledge of the witness' statement in chief by showing that other similar drive-in operations in the county were using, advocating and the trend in drive-in businesses was to use the exact limited access procedures that the witness had stated on direct examination was of great damage to the property, and the trial court sustained the objection of counsel for the property owner, to which counsel for the state excepted.''

Actually, it was only after the state had asked several questions with reference to the type of entrance to the Swifton Shopping Center that the court on its own initiative ordered the state's attorney to desist from further questions with reference to the Swifton Shopping Center entrance. There had been no objection on the part of counsel for the owners.

It should be borne in mind also that the purpose of the interrogation was to test the witness' reliability. It is our opinion that it is within the discretion of the court to order the cessation of a certain line of questioning if in its judgment such cross-examination will result in no advantage to either party.

Likewise, referring to the record, at page 231-232 there is the following:

''Q. Are you aware that Mr. Harold Ezell executed a lease to the Frisch Drive-In Restaurant for the premises at 7207 Beechmont Avenue, which has a frontage of 191.45 feet and a depth of 202 feet? A. They secured—

''Mr. Santen: I object to that. He is going to start stating values around here; we don't have the leases in front of us. I don't know what he is trying to do. Is there a comparability between a Frisch Restaurant and a Sixty-Second Shop Restaurant? How many miles away is it? Is that section already improved out there?

''Mr. Cook: That is right on the same street, your Honor, within the immediate area.

''The Court: What do you mean within the immediate area, how far away?

''Mr. Cook: Mr. Linder's property is located in Anderson Township, sir, I don't know his—

"The Court: Just answer the question, how far away is it?
"Mr. Cook: I would say about approximately a mile.
"The Court: Objection sustained.
"Mr. Cook: It is in the same business area, your Honor.
"The Court: The court will rule that is too far away."

Again, the court was within its right. In *Muccino* v. *Baltimore & Ohio Rd. Co.*, 33 Ohio App., 102, 168 N. E., 752, this is the syllabus:

"When, in a proceeding to fix the value of real estate taken for public purposes, evidence is offered on cross-examination of the sale price of other land, its competency depends upon whether there was an actual sale sufficiently near in point of time, whether the other land is similar in character, location, and other circumstances relating to value, and whether the sale was in a fair and open market, and this should be determined by the trial judge in the exercise of a sound discretion; and such determination will not be disturbed by a reviewing court, unless an abuse of discretion is shown."

The state also claims prejudicial error was committed in submitting the following special charge:

"I charge you, members of the jury, that the state of Ohio has not offered any evidence of any special benefit that will accrue to this property by reason of the changing of the new highway, and that therefore you must not deduct from the sum which you find to be the fair market value of the land taken any amount or sum for any benefit which you might find will accrue to this land by reason of the change in the highway."

However, a reference to the testimony of Mr. Spilker, on pp. 160, 161, 162 and 163, which follows, will demonstrate why this special charge was necessary.

"Q. Mr. Spilker, you have just enumerated a great many reasons why this business, all of these businesses will be damaged, do you think in all fairness to the ladies and gentlemen of the jury you might also like to tell them the advantages of having a new highway there?

"Mr. Santen: I object to that, your Honor. Go ahead and answer if you want to.

"The Court: Answer it if you want to.

"A. First, I must say this, if I am wrong correct me, judge—

"The Court: Answer the question to the jury.

"A. I don't think in valuing the damage to a property the benefits, if any, should be considered. At least that is my understanding of the law. If there are any benefits they would be assessed for it.

"Q. I am not asking your viewpoint on the law, you are an appraiser, not a lawyer. A. I have to have some knowledge of the law in order to appraise for condemnation purposes.

"Q. But there are advantages in having a new six-lane highway going past this business property? A. Advantages to the public but not to this property, absolutely not. I think it is damaging to this property. To the public generally, yes. That is why the general public will pay for it, but to the property, no. That is why he is entitled to damages. I think it is hurting him for the general reasons I gave you.

"Q. You want the ladies and gentlemen of the jury to believe that by reason of this new highway there will not be an increase in the flow of traffic on Route 125? A. There will be an increase in flow of traffic but I will give you an example. I know a party over on Sixth Street and he was telling me how he was going broke—

"Mr. Cook: I object to that.

"Mr. Santen: You asked him. He is giving you an illustration.

"Mr. Cook: What someone told him isn't proper.

"The Court: You are asking the witness for his knowledge concerning benefits or otherwise and he is giving you the reasons why, as far as he is concerned, there is no benefit to the business and he wants to give his reasons for it.

"Mr. Cook: My question is if he wants the ladies and gentlemen of the jury to believe that this new highway would not cause an increase in the flow of traffic. I didn't ask him for a dissertation on a friend of his on Sixth Street; I just want a yes or no answer.

"The Court: He may answer 'yes' or 'no' and describe the type of traffic it will increase.

"A. I will not disagree that traffic will increase, not because of this highway being built, the traffic will increase because there are more people and more automobiles, as they will increase whether this highway is improved or not improved.

"There will be an increase of traffic on this highway. The only question that goes through my mind is how does that traffic benefit this property. It is a traffic that is going past, not a buying traffic. It is a traffic flow, because of the design of the road, it is causing it to be moved past, not into this property.

"It is being designed by putting curbs along the highway, by putting divider strips in the highway, by leveling it off to drop the grade on this property and it is being widened to speed the traffic past it, not into it.

"Therefore, the fact that there is traffic flow does not create value. It must be a type of flow that will buy and stop in this area and buy and I think the buying urge has been destroyed by this improvement to a great extent."

Thus we feel as though this assignment of error has been definitely ruled out.

The seventh assignment of error presented, we must confess, a genuine problem. This assignment of error involved the court's refusal to submit the following charge to the jury.

"You are instructed as a separate proposition of law that you are not required to fix an amount in your verdict in accordance with the testimony of the greater number of witnesses; you should weigh all the evidence and fix an amount which is in accord with the fewer number of witnesses if you find such testimony entitled to the greater weight."

Certainly, the general rule is, as stated in 21 Ohio Jurisprudence (2d), 719, Section 692, "that the mere number of witnesses who may support the claim of one or the other of the parties to an action is not to be taken as the basis for solving disputed facts." This rule is repeated in 20 American Jurisprudence, 1043 and 1044, Section 1190, as follows: "An issue is not, however, to be determined merely by the number of witnesses testifying in support or in contradiction of it in comparison with the number of those giving opposing testimony, but by the greater weight and sufficiency of the evidence, of which the jury is the sole judge." Likewise, numerous appellate court decisions hold the same view, as reported in 12 West's Ohio Digest, 389-390. And in 32 Corpus Juris Secundum, 1054, there is the following statement: "As a general rule the weight or preponderance of the evidence in a civil case is not

necessarily determined by, or dependent on, the number of witnesses testifying on either side, statutes sometimes so providing.''

However, there are times when the number of witnesses enters into the determination of the weight of the evidence. 21 Ohio Jurisprudence (2d), 720, Section 693, sets forth the law in this regard as follows:

''It cannot be said, however, that no consideration whatever is to be given to the numerical preponderance of witnesses. In case of conflict of evidence, and especially where all the witnesses are equally intelligent and free from bias, and have had equal opportunity to know the facts to which they testify, numerical preponderance on one side is entitled to consideration, unless there is special reason to credit the evidence of the smaller number. In other words, the number of witnesses testifying on each side is a fact that may be considered and given due weight. It has been said in a federal case that ordinarily, the witnesses being equal in other respects, the number thereof will control.''

This was the holding, too, in the syllabus in *Rice* v. *City of Cleveland*, 144 Ohio St., 299, 58 N. E. (2d), 768:

''1. A court may instruct the jury that if it finds that any of the witnesses testifying for and any testifying against a controverted fact are equal in testimonial value as determined by all tests of truth or falsity—including credibility, fairness, candor, intelligence, opportunity for observations, corroboration by other testimony, and freedom from interest in the suit—then it may consider any numerical preponderance of such witnesses testifying on one side as to such fact.

''2. It is not reversible error for a trial court to refuse a request to charge the jury after argument and after the conclusion of the general charge, that 'if you find the witnesses to be equally credible, the number of witnesses testifying for or against the facts should be considered by you and given such weight as you consider proper.' ''

It is therefore our contention that the charge as given was incomplete inasmuch as no reference was made as to the circumstances under which the matter of the number of witnesses would enter into the determination of the weight of the evi-

dence. The court, therefore, did not err in refusing to submit an incomplete charge to the jury.

However, even if it should seem that the refusal to grant this special charge should be misleading, this court is of the opinion that it does not affirmatively appear that such refusal constitutes prejudicial error.

Moreover, as stated in 39 Ohio Jurisprudence, 1031, Section 313, it is necessary to present the charge in a correct form. Thus, it is said that:

"A request to charge before argument must not only embrace sound principles of law applicable to the case on trial, and be complete within itself, but must be drawn in such form and couched in such language as to require the court to give it in the form and language presented without any change or modification. The trial judge is not required to give to the jury, before argument, any special requested instruction unless it literally states correctly the proposition of law which it is intended to express,—unless it is strictly accurate and correct. He must give it in the form presented by counsel, and if, as presented, a request is not in proper form, does not contain a sound proposition of law, invades the province of the jury, or under the circumstances of the case is misleading,—if it is defective in any respect—the requested charge should be refused. The trial court should decline to give a requested instruction which, though good as far as it goes, lacks an essential qualification, such as one that excludes the necessary fact that negligence must have been direct cause of injury or which without some modification or explanation does not properly state a proposition of law applicable to the case. It is not sufficient that it 'very nearly states the law.' Nor is the court required to give a requested charge when it is necessary to change even a word in the form of the charge as presented."

Now, in the charge as submitted it is said that "you should weigh all the evidence and may fix an amount which is in accord with the fewer number of witnesses if you find such testimony entitled to the greater weight." The charge, therefore, is incorrect, for the reason that it imposes on the jury the duty of determining the amount on the basis of the testimony of witnesses without reference to any other evidence.

We cannot agree that the trial court "exhibited a lack of judicial decorum and bias and prejudice in the presence of the jury against the state," (eighth assignment of error) and that the verdict is manifestly against the weight of the evidence (ninth assignment of error).

We find no error in the record prejudicial to appellant. The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., and LONG, J., concur.