NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 11-1976

———

NEW YORK SHIPPING ASSOCIATION, INC.,
Appellant
v.

WATERFRONT COMMISSION OF NEW YORK HARBOR

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 10-cv-05633)
District Judge:  Honorable Jose L. Linares

———

Argued November 16, 2011

———

Before: FUENTES, CHAGARES, Circuit Judges,
and RESTANI,* Judge

(Filed:  February 7, 2012)

———

James R. Campbell, Jr., Esq.
Donato Caruso, Esq.
Carol N. Lambos, Esq. (Argued)
The Lambos Firm
303 South Broadway
Suite 410

———

* Honorable Jane A. Restani, Judge of the United States Court of International
Trade, sitting by designation.

Tarrytown, NY 10591

Counsel for New York Shipping Association, Inc.

Phoebe S. Sorial, Esq. (Argued)
Waterfront Commission of New York Harbor
39 Broadway
4th Floor
New York, NY 10006-0000

Counsel for Waterfront Commission of New York Harbor

_____

OPINION OF THE COURT

_____

RESTANI, Judge.

New York Shipping Association, Inc. ("NYSA") appeals the District Court's grant of defendant Waterfront Commission of New York Harbor's ("Commission") motion to dismiss on NYSA's claim that the Commission improperly implemented a program affecting NYSA's members. Because we conclude that appellant's claims are not ripe for judicial review, we will affirm the judgment of the District Court.

**I**

Because we write for the parties, we recount only the essential facts and procedural history, and we do so in a light most favorable to NYSA.

NYSA, a New York, not-for-profit, incorporated membership association of marine terminal operators, stevedoring companies, and vessel operators engaged in commerce at the Port of New York and New Jersey ("NY-NJ Port"), negotiates and

2

administers collective bargaining agreements on behalf of its members, who are required to be registered and licensed by the Commission to work in the NY-NJ Port. The Commission was created in 1953 by a compact between New Jersey and New York—and approved by Congress—to license, inter alia, stevedores and stevedoring companies. See Waterfront and Airport Comm'n Act, N.J. Stat. Ann. § 32:23-1, et seq.; N.Y. Unconsol. Laws § 9801, et seq.; Waterfront Comm'n Compact Between the States of N.Y. & N.J., Pub. L. No. 252-407, 67 Stat. 541 (1953). The Commission may, in its discretion, deny applications for and revoke stevedoring licenses as it deems in the public interest. N.J. Stat. Ann. § 32:23–24.

In August 2010, the Commission announced a "request for expression of interest and statements of qualifications" for companies interested in an appointment as an Independent Private Sector Inspector General ("IPSIG") for stevedores and stevedoring companies under the Commission's oversight.[1] In October 2010, NYSA filed a

---

[1] In the announcement, the Commission stated that it was "seeking to develop a list of qualified [IPSIGs] . . . to provide monitoring services for specified stevedoring companies on as-needed basis." After discussing qualifications, the Commission described the duties of an IPSIG:

> The IPSIG will establish and maintain internal controls designed to deter unethical or illegal conduct, and will report any unethical or illegal conduct observed to the Commission. The IPSIG will examine the operations of stevedoring companies to ensure that they are run effectively without fraud, criminal influence, improper accounting and/or hiring practices, or other malfeasance. The Commission may require a stevedoring company to retain an IPSIG pursuant to a responsibility agreement or stipulation with the Commission, in order for that stevedoring company to continue to operate in the Port. Upon selection by the Commission, the IPSIG will be hired by the stevedoring company but will report directly to the Commission, with the stevedoring company retaining responsibility for payment of the IPSIG's services.

complaint, seeking declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.  The Commission filed a motion to dismiss for lack of subject matter jurisdiction due to the absence of standing and ripeness as well as for failure to state a claim upon which relief can be granted.  In March 2011, the District Court granted the Commission's motion to dismiss, finding no standing or ripeness.  NYSA now appeals.

## II

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  Our review of the District Court's order granting defendant's motion to dismiss for lack of subject matter jurisdiction is plenary.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Id.

In deciding whether plaintiff's claim regarding an agency's decision is ripe as a matter of prudence,[2] we must examine "both the fitness of the issues for judicial decision

---

[2] "[T]he constitutional requirement for ripeness is injury in fact."  See Duke Power Co. v. Carolina Envtl. Study Grp., 438 U.S. 59, 81 (1978) (finding ripeness satisfied where standing inquiry had shown that plaintiff's immediate injury was redressable).  The District Court found constitutional ripeness absent on the basis that NYSA's injuries lacked imminence.  Ripeness occasionally requires more than an injured plaintiff.  Armstrong World Indus. v. Adams, 961 F.2d 405, 420 n.29 (3d Cir. 1992).  Although the District Court did not address the prudential factors, for the purpose of addressing ripeness we assume—but do not hold—that NYSA possessed a valid injury.

and the hardship to the parties of withholding court consideration."[3] Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 730, 733 (1998) (internal quotation marks omitted) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967)) (finding no ripeness where the National Forest Service had issued a proposed plan, but "considerable legal distance between the adoption of the Plan and the moment when a tree is cut" existed); Nextel Commc'ns of the Mid-Atlantic, Inc. v. City of Margate, 305 F.3d 188, 193 (3d Cir. 2002) (finding no ripeness where the zoning board could reverse itself in the future). For declaratory judgments, we have "refined this test because declaratory judgments are typically sought before a completed injury has occurred," focusing on the following non-exhaustive factors: "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." Pic-A-State Pa, Inc. v. Reno, 76 F.3d 1294, 1298 (3d Cir. 1996) (citing Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990)). Adversity of interest is minimal where plaintiff's action depends upon a contingency which may not occur. Armstrong World Indus. v. Adams, 961 F.2d 405, 413–14 (3d Cir. 1992) (declining to review the constitutionality of takeover

---

[3] Factors relevant to 'fitness' include, but are not limited to:

. . . whether the issue is purely legal (as against factual), the degree to which the challenged action is final, whether the claim involves uncertain and contingent events that may not occur as anticipated or at all, the extent to which further factual development would aid decision, and whether the parties to the action are sufficiently adverse. The 'hardship' consideration focuses on whether a plaintiff faces a direct and immediate dilemma, such that lack of review will put it to costly choices.

NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 342 n.8 (3d Cir. 2001).

legislation where no formal tender offer was ever initiated).  The lack of conclusivity that

a declaratory judgment would have on the legal relationship between the parties can be

outweighed by the hardship of postponing judicial review.  Id. at 421–22 (finding the

predominantly legal nature of plaintiffs' claims did not compensate for the claims'

contingent nature and absence of hardship); Lake Carriers' Ass'n v. MacMullan, 406 U.S.

498, 507–08 (1972) (finding plaintiff's claim ripe where the statute creating an immediate

obligation to install sewage storage devices regardless of whether state enforcement

action had been taken).  Finally, utility looks at whether judgment would have any

beneficial effect on the plaintiff.  Armstrong World Indus., 961 F.2d at 422–24 (finding

plaintiffs faced no "'Hobson's choice' of foregoing lawful behavior or subjecting

themselves to prosecution under the challenged provision").

NYSA alleges that its members were denied the right to participate in the

legislative process required to change the Commission's governing statute and that funds

were improperly used to develop the IPSIG program.  NYSA does not allege that the

Commission ever offered a NYSA member an IPSIG or has used the IPSIG program to

deny a member's right to full administrative procedures.  At the time NYSA filed its

complaint, the Commission had no final program, the details of the IPSIG program were

insufficiently documented, and the Commission had yet to implement the program.[4]  The

_____

[4] NYSA's claim that the use of the future tense in the Commission's "Request for
Expressions of Interest and Statements of Qualifications in Being Considered for Appointment as
an Independent Private Sector Inspector General" is sufficient to demonstrate finality is

(continued...)

6

legal question at issue here—whether the Commission's actions fall within its statutory authorization—likely turns on how the IPSIG program will be implemented. Judicial review of the Commission's actions, therefore, would benefit from further factual development. See Armstrong World Indus., 961 F.2d at 419 (finding that the present effect of an anti-takeover statute was "too attenuated to give rise to a case or controversy").

NYSA's statement that on account of its procedural injury the case is ripe is an ipse dixit. Allowing the types of injuries alleged by NYSA to be a sufficient basis for ripeness would permit litigation at the earliest phases of any administrative action, such as staff meetings. Staying judicial action would permit the Commission to finalize the program, lend the court a concrete example of how it will be implemented, and demonstrate how the program interfaces with the current licensing system. Without a definite program to review, we lack a guarantee that a decision on the merits will target the program the Commission actually implements rather than some abstract program.

We find that absent a definite program, the case brought by appellant lacks ripeness. Accordingly, we will affirm.

---

[4](...continued)
inaccurate. The Request as a whole fails to describe the IPSIG program with sufficient finality to avoid an inappropriate level of abstraction.

7