NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 19-1366

———————————

ELLIOTT J. SCHUCHARDT, individually and doing business as the
Schuchardt Law Firm, on behalf of himself and all others similarly situated,

Appellant

v.

PRESIDENT OF THE UNITED STATES OF AMERICA;
DIRECTOR OF NATIONAL INTELLIGENCE;
DIRECTOR OF THE NATIONAL SECURITY AGENCY AND
CHIEF OF THE CENTRAL SECURITY SERVICE;
DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION

———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-00705)
District Judge: Honorable Cathy Bissoon

———————————

Argued September 23, 2019

Before: McKEE, AMBRO, and ROTH, <u>Circuit Judges</u>

(Opinion filed:  March 2, 2020)

Elliott J. Schuchardt (Argued)
6223 Highland Place Way
Suite 201
Knoxville, TN 37919

        Counsel for Appellant

Joseph H. Hunt
   Assistant Attorney General
Scott W. Brady
   United States Attorney
Joseph F. Busa (Argued)
H. Thomas Byron III
United States Department of Justice
Civil Division, Appellate Staff 7537
950 Pennsylvania Avenue, N.W.
Washington, DC  20530

     Counsel for Appellees

---

OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

Elliott J. Schuchardt alleges that the bulk data collection programs of the National Security Agency ("NSA") under the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 *et seq*., violate the Fourth Amendment because they allow the Government to intercept, access, monitor, and store all or substantially all U.S. domestic e-mail without probable cause.  Pl.'s App. 138–67.  He filed suit in 2014 against the President of the United States, the Director of National Intelligence, the Director of the NSA, and the Director of the Federal Bureau of Investigation ("FBI").  After the District Court dismissed Schuchardt's suit for lack of facial standing under Federal Rule of Civil Procedure 12(b)(1), we reversed.  *See Schuchardt v. President of the U.S.* ("*Schuchardt I*"), 839 F.3d 336 (3d Cir. 2016).

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In a facial attack, we review only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). However, if the defendant contests the pleaded jurisdictional facts, "the court must permit the plaintiff to respond with evidence supporting jurisdiction." *Id.* at 177 (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711–12 (3d Cir. 1982)).

On remand, the District Court held that Schuchardt failed to rebut the evidence the Government submitted to challenge his factual standing. We agree and thus affirm the District Court's ruling.

## A. Procedural Background

Schuchardt specifically alleged that the NSA operates a program known as PRISM through which it collects "massive quantities of e-mail and other data created by [U.S.] citizens" "directly from the servers" of U.S. service providers like Google, Microsoft, Yahoo, Facebook, Dropbox, and Apple. Pl.'s App. 145. As "a consumer of various types of electronic communication, storage, and [I]nternet-search services" of those service providers, *id.* at 156, Schuchardt further asserted that the Government "obtained direct access to the servers" of the providers and was "intercepting, accessing, monitoring and/or storing [his] private communications . . . ." *Id.* at 145, 156, 158.[1]

---

[1] The Government argues that this case is about PRISM and not other programs. Gov't Br. 27–31. That question was never squarely before the District Court. Nor is it before us. The Government did not argue on remand that Schuchardt was not permitted to submit non-PRISM evidence, and in fact itself submitted evidence that goes beyond

Schuchardt supplemented his complaint with two categories of exhibits. First, he submitted reports from the Washington Post and Guardian newspapers about classified documents leaked by former NSA contractor Edward Snowden, as well as excerpts of the materials themselves. These exhibits refer to an NSA program engaged in the bulk collection of domestic e-mail metadata. *Id*. at 91–131. Several of the documents appear to be internal NSA slides. One is titled "Dates When PRISM Collection Began For Each Provider," and lists dates when several service providers began collection. Another slide, "New Collection Posture," includes slogans such as "Exploit it All." *Id.* at 109–10.

The second category of documents Schuchardt attached contained affidavits filed in support of the plaintiffs in *Jewel v. NSA*, 965 F. Supp. 2d 1090 (N.D. Cal. 2013), a separate case challenging the NSA's interception of internet traffic. *Id*. at 1098. The affidavits were of former NSA employees William E. Binney, Thomas A. Drake, and J. Kirk Wiebe, who asserted that after September 11, 2001, the agency developed an expansive view of its own surveillance authority. Pl.'s App. 186–219. Binney stated that he was the creator of the technology the Government uses today to conduct large-scale data collection, and that members of his team told him the Government implemented intelligence activities after September 11 known as the President's Surveillance Program that involved the collection of domestic e-mails without the privacy protections built into other NSA programs. *Id*. at 187–88.

---

PRISM. *See* Gov't's Add. A; Gov't's Add. B. Schuchardt correctly points out that his complaint is broad enough to include programs beyond PRISM. Schuchardt Reply 12.

4

The District Court dismissed in 2015 Schuchardt's complaint for lack of standing. A Rule 12(b)(1) motion under the Federal Rules of Civil Procedure to dismiss for lack of subject matter jurisdiction may be treated as either a facial or factual challenge. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

The District Court concluded, for facial challenge purposes, that Schuchardt had "identified no facts from which [it] reasonably might infer that [the plaintiff's] own communications have been targeted, seized or stored." Pl.'s App. 14–24. As noted, we reversed in 2016 and concluded that his allegations "plausibly stated an injury in fact personal to" him "as a facial matter." *Schuchardt I*, 839 F.3d at 338. Thus we considered the exhibits Schuchardt submitted and afforded his pleadings the presumption of truth. Though the Government disputed Schuchardt's allegations and submitted evidence, we could not, on a facial attack, consider its submissions. *Id*. at 346, 352–53. Finally, we noted that the Government was "free upon remand to make a factual jurisdictional challenge to Schuchardt's pleading." *Id*. at 353.

On remand, the parties agreed that, rather than engage in discovery as to jurisdiction, the Government would make an informal information disclosure; if Schuchardt was not satisfied, he could resume the litigation. The District Court directed Schuchardt to inform it "whether or not this case w[ould] be dismissed based on the information provided . . . ." Pl.'s App. 10. Thereafter, Schuchardt did not make any discovery or extension requests. The Government filed a renewed motion to dismiss, and Schuchardt filed a response relying on new affidavits from Binney and Wiebe. *Id*. at 63–

5

66. Schuchardt conceded at oral argument that he did not make any discovery or extension requests nor ask for a hearing to qualify Binney and Wiebe as experts.

The District Court issued an order in February 2019 dismissing Schuchardt's case for lack of standing on a factual challenge. Pl.'s App. 63. It concluded that the Government showed that it "did not engage in dragnet-type collection activity," and in support of that conclusion it incorporated "by reference, as if fully restated, the evidence and arguments recited in [the Government's] opening and reply briefs." *Id*. at 64. Moreover, the documents Schuchardt submitted were inadmissible and did not create a factual dispute as to his standing. The Court went on to state that, "[e]ven permitting all of [Schuchardt's] evidence—which . . . [was] restricted to the recent affidavits of [] Binney and Wiebe," and the documents attached thereto, the Government's "positions carry the day." *Id*. at 64–65. Schuchardt's "post remand efforts" were "underwhelming" and merely amounted to taking the same evidence previously before the District Court and "filter[ing] it through the mouthpiece of purported experts." *Id*. at 65.[2]

**B. Jurisdiction and Standard of Review**

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction per 28 U.S.C. § 1291. "When reviewing an order dismissing a claim for lack of subject matter jurisdiction, we exercise plenary review over legal conclusions and review findings of fact for clear error." *Adorers of the Blood of Christ v. Fed. Energy Reg.*

---

[2] Because it incorporated the Government's briefs in their entirety, we discuss the evidence and arguments therein as the Court's own decision. We nonetheless note that the wholesale adoption of one side's briefs is a practice we discourage. *See In re Complaint of Luhr Bros., Inc.*, 157 F.3d 333, 338 (5th Cir. 1998); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 313–14 (7th Cir. 1986).

*Comm'n*, 897 F.3d 187, 193 (3d Cir. 2018) (citation omitted). We review the District

Court's evidentiary findings for abuse of discretion. "In order to justify reversal, a

district court's analysis and resulting conclusion must be arbitrary or irrational." *United*

*States v. Bailey*, 840 F.3d 99, 117 (3d Cir. 2016) (citation and quotation marks omitted).[3]

### C. Rule 12(b)(1) Factual Challenge

On a Rule 12(b)(1) factual challenge, the plaintiff has the burden of proof,

*Mortensen*, 549 F.2d at 891, and the burden of persuasion, *Gould Elecs Inc.*, 220 F.3d at

178. Thus "a 12(b)(1) *factual* challenge strips the plaintiff of the protections and factual

deference provided under 12(b)(6) review" for a typical motion to dismiss on the merits,

*Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016)

(emphasis added) (citation omitted), and under *facial* 12(b)(1) review, *see CNA v. United*

*States*, 535 F.3d 132, 139 (3d Cir. 2008).

It is true that a "[j]urisdictional finding of genuinely disputed facts is inappropriate

when the jurisdictional issue and substantive issues are so intertwined that the question of

jurisdiction is dependent on the resolution of factual issues going to the merits of an

action." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) (citation omitted).

When a case raises a disputed factual issue that goes both to the merits and jurisdiction,

---

[3] Schuchardt devoted much of his brief to the merits of this case. Schuchardt Br. 43–55. The District Court did not reach the merits, as it dismissed on a Rule 12(b)(1) motion. Accordingly, we do not consider his arguments as to the merits. Schuchardt also cited for the first time in his opening brief to non-record evidence (for example, a statement by a government scientist) that every e-mail sent in the United States goes into a Government database. Schuchardt Br. 22, 38. With rare exceptions not in play here, we will not consider evidence outside the record. *See Reed v. Phila. Bethlehem & New England R.R. Co.*, 939 F.2d 128, 133 (3rd Cir. 1991).

district courts must "demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *Mortensen*, 549 F.2d at 892. Although we have not defined the contours of the "less in the way of jurisdictional proof" standard, we have held that "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[,] its very power to hear the case[,] there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 891. "The form of the inquiry is flexible . . . : 'As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.'" *Id*. at 891 n.16 (quoting *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939)).

This is not a case where Schuchardt presented competent evidence that the District Court discounted or where it weighed competing evidence presented by the Government and Schuchardt.[4] The Court considered the evidence the Government submitted to challenge Schuchardt's standing, stated that the burden of proof was on Schuchardt, gave him an opportunity to be heard, and considered his submissions in detail. On this record, the Court held that he did not create a dispute of material fact as to his standing. *See CNA*, 535 F.3d at 144–46 (affirming dismissal where plaintiffs were heard on the jurisdictional issue but failed to present evidence creating a factual dispute as to subject matter jurisdiction). It did not err by considering the admissibility of Schuchardt's submission, as required expressly by some Circuits. *See McPhail v. Deere & Co.*, 529

---

[4] This is also not a case where the Government refused to turn over discovery related to its intelligence-gathering activities. Schuchardt made no discovery requests, and the Court did not rule on any applicable national security privileges.

F.3d 947, 954 (10th Cir. 2008); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540, 542 (7th Cir. 2006).

### D. The District Court's Evidentiary Rulings

Thus we turn to the evidentiary rulings of the District Court. It held that the documents Schuchardt submitted on remand were unauthenticated and contained hearsay, and that Binney and Wiebe's opinions did not meet the reliability requirements for admission of expert testimony. Gov't's Add. A 8–9, 25–26; Gov't's Add. B 6–7.[5] The Court considered Schuchardt's lack of evidence in light of the Government's admissible submission and concluded that Schuchardt failed to meet his burden of proof.

### 1. Schuchardt Presented Unauthenticated Documents.

A party seeking to rely on a piece of evidence must offer proof sufficient to support a finding that the item is what that party claims it to be. Fed. R. Evid. 901(a); *United States v. Browne*, 834 F.3d 403, 408 (3d Cir. 2016). That evidence "must itself be admissible." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 285 (3d Cir. 1983). As for the purported NSA slides, Pl.'s App. 108–13, Schuchardt did not explain what they were, other than describing them as the "Snowden documents," Gov't's Add. A 8–9, 25–26. The District Court could only speculate about what they were. The origin and nature of the new documents attached to Binney's affidavit on remand were equally dubious. The new documents included maps showing "tap points" where the NSA

---

[5] The Government inaccurately argues that Schuchardt's opening brief failed to address the evidentiary holdings. Gov't Br. 23. Schuchardt did argue, if summarily, that the Court understated Binney's expertise and that he could have authenticated the documents. Schuchardt Br. 30–33.

connects into service providers' networks and slides explaining collection. Pl.'s App. 244–47. Schuchardt argues that Binney and Wiebe authenticated the documents in their affidavits, Schuchardt Reply 6, because those documents related to programs they created and worked on, Pl.'s App. 231, and because Binney obtained them from publications, which in turn allegedly got the documents from Snowden, *id*. at 232. The Court correctly rejected this argument because Binney claimed no personal knowledge that the documents he obtained from the publications were those allegedly misappropriated by Snowden. Gov't's Add. B 6–7. Neither Binney nor Wiebe claimed he created the documents or to know who did.

Schuchardt's argument that the Snowden documents were authenticated by the Government's admissions that Snowden misappropriated documents also fails. Any general admissions by Government officials that Snowden stole documents did not authenticate the specific documents Schuchardt submitted to the Court. *See ACLU v. U.S. Dep't of State*, 878 F. Supp. 2d 215, 224 (D.D.C. 2012). Hence there was no abuse of discretion in ruling that those documents were not properly authenticated.

### 2. Schuchardt Presented Evidence Based on Hearsay.

Hearsay is any statement, other than one made by a declarant while testifying at the trial or hearing, "offer[ed] in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. It is generally inadmissible as evidence. *See United States v. Pelullo*, 964 F.2d 193, 203 (3d Cir. 1992). The District Court concluded that the NSA slides "constitute written out-of-court statements regarding PRISM's operation that [Schuchardt] offers for the truth of the matters asserted," and are inadmissible hearsay.

10

Gov't's Add. A 26.  It reached the same conclusion regarding the new documents attached to Binney's affidavit because Binney claimed no personal knowledge of the documents and obtained them from journalists, who allegedly obtained them from Snowden, so that "[e]ach link in this chain of custody is . . . predicated on . . . hearsay." Gov't's Add. B 6–7.  As for the newspaper articles and editorials, the Court held that they too were hearsay.  Schuchardt offered no substantial argument why these materials were subject to a hearsay exception.  We accordingly affirm the District Court in barring them.

### 3.  Schuchardt Failed to Qualify His Expert Witnesses.

Federal Rule of Evidence 702 governs the use of expert testimony in federal courts and imposes three threshold considerations: qualifications, reliability, and fit.  *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994).  An expert witness must have specialized expertise or knowledge.  *See id.* at 741.  Though we construe the specialized knowledge requirement liberally, "at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . ." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998).  District courts perform a screening function, typically called a *Daubert* hearing, to ensure that evidence presented is, among other things, reliable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  It is so if "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation . . . .'" *Paoli*, 35 F.3d at 742 (citation omitted).  Rule 703 permits experts to rely on hearsay so long as it is of the kind normally employed by experts in the field.  *See In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999).  However,

11

the trial judge must conduct an independent evaluation of the reasonableness of relying on the type of data underlying the opinion. *See Paoli*, 35 F.3d at 748.

Binney stated in his affidavit that he "was the primary designer and developer of a number of programs designed to acquire and analyze very large amounts" of information from the "Internet" before leaving the NSA in 2001. Pl.'s App. 228–29. He continues to serve as a consultant to foreign governments on intelligence collection and has testified before foreign government agencies. *Id.* at 240. According to Binney, after the September 11 attacks the NSA's surveillance program changed to allow indiscriminate bulk data collection, and the President's Surveillance Program thereafter involved the "collection of the full content of domestic e-mail traffic." *Id.* at 230. Binney based his conclusions on "the highly-detailed information contained in the documents leaked by [Snowden]." *Id*. at 231. Binney stated that "[t]he documents provided by Mr. Snowden are the type of data that experts in the intelligence community would typically and reasonably rely upon . . . ." *Id.* at 232. Wiebe submitted a two-page affidavit agreeing with Binney's assessment based on his review of the same documents. *Id*. at 249–54.

The District Court concluded that Binney and Wiebe were not qualified to testify as experts. Neither identified or described the field of "scientific, technical, or other specialized knowledge" in which he is purportedly an expert. Gov't Add. B 9. Wiebe did not discuss the exhibits at all in his affidavit, and Binney did not explain how the exhibits led him to reach his conclusions. *Id*. at 9–10. The Court therefore could not determine whether their conclusions were based on reliable principles and methods. It also discounted Schuchardt's argument that the affidavits were admissible under Rule

12

703 based on Binney's assertion that the Snowden documents are the "type of data that experts in the intelligence community would typically and reasonably rely upon." *Id*. at 10 n.7.[6] That assertion provided no basis for the Court to conduct an independent evaluation into reasonableness. *Id*. Moreover, Schuchardt did not request a *Daubert* hearing or submit evidence regarding Binney and Wiebe's field of expertise or their methodologies. Accordingly, the Court did not abuse its discretion in barring their testimony as experts.

### 4. The Government's Evidence

Contrast Schuchardt's lack of competent evidence against the admissible submissions by the Government. These included a sworn declaration from Wayne Murphy, the Director of Operations at the NSA, who was "responsible for . . . managing the integration and use of the NSA's global foreign intelligence authorities" and had "personal knowledge" of the matters alleged in Schuchardt's complaint. Pl.'s App. 173. He stated that "[n]either PRISM nor any other NSA intelligence-gathering activity involves the bulk collection (or storage) of all or substantially all of the e-mail (or other Internet-based communications) of all U.S. persons." *Id*. The District Court credited those statements and reasoned that Schuchardt could not show that his communications would have been targeted and collected. Gov't Add. A 22. The Government also cited other authorities, such as the Report on the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act issued in July 2014 by the

---

[6] The District Court also separately ruled, and we affirm, that Binney and Wiebe could not testify as fact witnesses because they did not claim any personal knowledge of the NSA's current collection programs. Gov't's Add. A 29–31.

Privacy and Civil Liberties Oversight Board, as well as case law from other Circuits, acknowledging the targeted nature of PRISM, *see, e.g., United States v. Mohamud*, 843 F.3d 420, 440 (9th Cir. 2016).

*   *   *   *   *

Because the District Court did not abuse its discretion in concluding that Schuchardt's evidence was inadmissible and that the Government's evidence stood uncontroverted, we affirm its ruling that Schuchardt lacked factual standing for his suit.